UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HERCULES S. COSTAKIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-0219-DKL-RLY |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

*Entry on Judicial Review*

Hercules S. Costakis appeals the decision of the Commissioner of Social Security denying his application for disability insurance benefits. The parties consented to the Magistrate Judge's exercise of jurisdiction, and the District Judge referred the case to the undersigned to conduct all proceedings and enter judgment in this matter pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Court finds that the decision should be upheld.

**I.  Background**

Costakis applied for disability insurance benefits in September 2010, alleging disability since December 2007 due to back injury, low back pain, and severe depression. He was 44 years of age when Administrative Law Judge ("ALJ") Blanca B. de la Torre issued her decision. Another ALJ had issued a decision in 2012, finding Costakis not disabled, and the Appeals Council remanded the case for further proceedings. As a

result, in August 2013, ALJ de la Torre held a hearing at which Costakis and a vocational expert testified.

Costakis stated that he had not seen his primary care physician, Julia Yaraei, M.D., since 2011. [R. 61.] He was treated at Pecar Health Care Center in July 2008 and from October 2008 to 2009, and then resumed treatment in January 2011. [R. 75.] Costakis testified that the last MRI he had had showed that the abnormal findings detected on a previous MRI were no longer present. [*Id.*] He said that if he sat for more than fifteen minutes, he would get a sharp pain that felt like a knife being twisted into his back. [R. 65.]

An MRI of Costakis's lumbar spine in 2008 showed a small disc herniation at L5-S1 contacting the right S1 nerve root without compression or displacement. [R. 433.] An MRI in December 2010 showed evidence of a L5-S1 lateral recess touching the nerve root. [R. 505.] Similarly, an electromyography and nerve conduction study in 2009 resulted in normal findings, except for very mild chronic or old neuogenic changes in the left L5 distribution.

In 2008 Costakis was seen by J.W. Bergeron, M.D., a specialist in physical medicine and rehabilitation, for treatment of back pain and a functional capacities assessment. [R. 708-10.] On exam, Dr. Bergeron found that Costakis was "in no apparent distress." [R. 711.] His gait was normal, his spine was unremarkable, he had full lumbar range of motion, normal tone in his legs, and negative straight leg raising tests bilaterally. [*Id.*] Dr. Bergeron opined that Costakis was unchanged and "remain[ed] without radicular signs or symptoms." [*Id.*] Dr. Bergeron deemed test results unreliable because of variable

2

effort by Costakis. [R. 708, 710.] He gave Costakis a 0% whole person permanent partial impairment rating. [R. 711.] Dr. Bergeron released Costakis to return to unrestricted work duty.

Costakis was treated for back pain at Wishard Hospital, the Indiana Spine Group, and Pecar Health Care Center. He was prescribed medications, physical therapy, and had a few procedures such as injections. A physical exam in 2008 performed by Dr. Hardeep K. Dhadha, M.D., at Wishard showed no lower extremity neurologic deficits, some tenderness of the lumbar spine on palpation, and no paraspinous pain. [R. 464, 499.] Dr. Dhadha recommended a lidocaine patch and in 2009 he prescribed nerve branch blocks. [R. 464-65, 517.] In 2009, Paul E. Kraemer, M.D., of the Indiana Spine Group, found that Costakis had a normal gait and normal strength in his lower extremities, but a limited range of motion in his spine. [R. 429.] However, Costakis had no signs of neurologic dysfunction, and Dr. Kraemer did not find that he had any real operable pathology. [R. 428.] Pain specialists Dr. Edward Kowlowitz and Dr. P. Mackie noted normal findings on their physical examinations of Costakis. [R. 585, 814.] They agreed that Costakis would not benefit from surgery. In September 2012, Costakis told Dr. Mackie that he could walk 2,000 steps comfortably. [R. 814.]

In addition, Costakis has been diagnosed with major depressive disorder, recurrent, severe; panic disorder with agoraphobia; and bipolar disorder. [R. 541, 757.] He has received mental health treatment at Wishard Hospital and Midtown Mental Health. His treatment included prescription medications such as Zoloft, Cymbalta, and Lyrica; therapy; and counseling. Mental health records show that Costakis's chronic back

pain and its treatment have been closely linked with his depression. By way of example, in 2009, Dr. Mackie referred Costakis to Midtown Health Clinic "for depressive symptoms and exploring coping skills for life and pain management." [R. 458.] At his initial assessment at the clinic, Costakis reported that his back pain and associated limitations "lead[] to his depression." [*Id.*] Indeed, his treatment plan called for therapy sessions with medication management by the Pain Management Specialist to decrease depressive symptoms. [*Id.*]

In 2010 Costakis was hospitalized one night for symptoms of depression and suicidal ideation. [R. 704.] A short time later, his psychiatrist Dr. Rodney Maust noted that Costakis reported he was "a lot better" and "never felt this good in his life." [R. 767.] In fact, Costakis was getting out of his home and going to concerts, the State Fair, and the mall. He also was reading and going for walks. [*Id.*] In 2013, Dr. Maust noted that Costakis was sleeping better, babysat his grandson four to five times each week, played computer games, ran errands, and ate out with his wife a few times a month. [R. 774.]

ALJ de la Torre denied Costakis's application for benefits using the five-step sequential evaluation process. She found that he last met the insured status requirements of the Social Security Act on March 31, 2013, and that he had not engaged in substantial gainful activity between his alleged disability onset date and date last insured. [R. 28.] The ALJ found that Costakis had severe impairments of obesity, degenerative disk disease of the lumbar spine, diabetes mellitus, major depressive disorder, and anxiety. [*Id.*] She determined that he did not have an impairment or combination of impairments that meets or equals the severity of a listed impairment, specifically considering Listing

4

1.04 (disorders of the spine), 12.04 (affective disorders), and 12.06 (anxiety disorders). [R. 29.] The ALJ assessed Costakis's residual functional capacity, concluding that he could perform light work with some limitations:

> Specifically, he is able to lift and carry twenty pounds occasionally and up to ten pounds frequently. He is able to sit for one hour at one time and for six hours during an eight-hour workday. He is able to stand for one hour at one time and for six hours during an eight-hour workday. He is able to walk for one hour at one time and for six hours during an eight-hour workday. He is not able to climb ladders, ropes or scaffolds, but he is able to climb ramps and stairs occasionally. He is able to reach, handle objects (gross manipulation), finger (fine manipulation) or feel shapes, textures and the like frequently. He is able to understand, remember and carry out short, simple and repetitive instructions. He is able to sustain attention and concentration for two-hour periods at one time and for eight hours in a workday on short, simple and repetitive tasks. He has the ability to use judgment in making work-related decisions commensurate with this type of work.…

[R. 33-34.] She found him unable to perform any past relevant work. But considering his age, high school education, work experience as a maintenance repair worker, and residual functional capacity, the ALJ determined that there were jobs existing in the national economy that he could perform, including cashier, machine operator, and hand packager. [R. 41-42.] Therefore, she concluded that he was not disabled. The Appeals Council denied review, and Costakis sought judicial review in this Court.

## II. Discussion

Judicial review of the ALJ's decision is limited to determining whether the findings of fact are supported by substantial evidence and whether the ALJ made any legal error. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might

5

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court reviews the entire record but does not reweigh the evidence, resolve conflicts in the record, make credibility determinations, or substitute its own judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ "need not mention every snippet of evidence in the record," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), but must build a "logical bridge" between the evidence and her conclusions, *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). In doing so, the ALJ "may not ignore entire lines of contrary evidence." *Arnett*, 676 F.3d at 592.

Costakis raises several arguments on appeal. He first argues that the ALJ erred in failing to properly evaluate his mental impairments in combination with his pain. Second, he argues that she erred in determining whether his impairments meet or medically equal Listing 12.04. Third, he maintains that the ALJ was dismissive of his therapist's December 2010 statement. Fourth, he contends that the ALJ should have had a medical expert determine whether his pain and depression satisfied Listing 12.04. Finally, he challenges the ALJ's RFC determination, asserting that it was based on an improper credibility finding and not in compliance with SSR 96-7p.

Starting with the ALJ's consideration of Costakis's mental impairments and pain, not only does the ALJ's written decision acknowledge that she must consider whether a claimant's impairment or combination of impairments meets or equals a listing [R. 27], but also her decision shows that she did consider his physical and mental impairments, singly and in combination. [R. 28-40.] The ALJ considered the treatment records and opinions of Costakis's physicians, psychiatrist, other pain specialists, the clinical

psychologist at the Center for Pain Management, state agency psychologists, and all the other record evidence regarding Costakis's mental impairments and pain. And as the Commissioner notes, Costakis does not argue that his psychiatrist Dr. Maust or the Pain Center psychologist failed to consider the impact of mental impairments on his pain. Indeed, his mental health records show that they recognized the association of pain and depression and treated both problems together. The ALJ did not err in evaluating Costakis's mental impairments and their impact on his pain.

As for the ALJ's determination that Costakis failed to meet Listing 12.04, a claimant bears the burden of proving that he meets or equals the severity of a listed impairment, and he must establish that he meets all the criteria of a listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). To meet the severity of Listing 12.04, a claimant must satisfy both 12.04A and 12.04B, or satisfy 12.04C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. In challenging the ALJ's determination, Costakis focuses on 12.04B, known as the "B criteria." The B criteria require that the claimant's mental impairments result in at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, and pace; or (4) repeated episodes of decompensation. *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B. The ALJ found that Costakis had mild restrictions in activities of daily living, mild difficulties in social functioning as well as concentration, persistence, or pace, and that he had no episodes of decompensation of extended duration. [R. 32.]

Costakis argues that the ALJ failed to consider how his sharp back pain, his need to lay in a recliner, and the pain radiating to his legs impacted his activities of daily living. He also argues that she failed to consider the physical pain and how it affected his ability to get along with other people and get out. To begin with, the ALJ expressly discussed Costakis's allegations of back pain so sharp that he "likened it to being stabbed in the back with a knife" [R. 35], his need to lay flat on his back, and the pain radiating down his legs, [*id.*], along with his other pain allegations. She also discussed his ability to get along with others and get out of the house. [R. 32 (citing Costakis's function report at R. 363-71).] Furthermore, the ALJ's B criteria findings are supported by, among other evidence, Dr. Maust's records, the notes of the psychologist at the Center for Pain Management, and the state agency psychologists' opinions. And to the extent Costakis is challenging the ALJ's finding that his complaints of pain were not fully credible, as addressed below, the ALJ gave good reasons for discrediting his allegations. Therefore, the ALJ's finding that Costakis failed to meet or equal Listing 12.04 is supported by substantial evidence.

Regarding the admission to Wishard Hospital in June 2014 for suicidal ideation and his admission to St. Vincent Stress Center in 2010 for "partial hospitalization," Costakis argues that an expert should have evaluated the length of these decompensations. Under the Listings "*repeated episodes of decompensation, each of extended duration* … means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Knight v. Colvin*, No. 2:14-CV-465-PRC, 2016 WL 1237886, at *4 (N.D. Ind. Mar. 30, 2016) (quoting 20 C.F.R. § Pt. 404, Subpart P Appx. 1, §

8

12.00.C.4). Neither admission even comes close to the two-week durational requirement. Thus the ALJ did not err in not seeking a medical expert's evaluation on the issue. Besides, even if Costakis had satisfied the durational requirement, he failed to satisfy the frequency requirement. He has not shown that he had three episodes of decompensation or an average of one every four months in a year. Consequently, he has not shown that he had repeated episodes of decompensation and cannot meet Listing 12.04B.

Costakis argues in one sentence that the ALJ was dismissive of his former therapist N.R. Brandenstein's December 2010 statement. As the Commissioner notes, however, he has not developed this argument and it is therefore waived. *See, e.g.*, *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (noting that perfunctory and undeveloped arguments are waived). In any event, the ALJ did not simply dismiss the therapist's opinion; instead, she gave adequate reasons for giving it no weight. [R. 39.] For example, the ALJ noted that the therapist merely stated that Costakis was limited in capacities for sustained concentration/memory, social interaction and adaption, but did not rule out some proficiency in those areas. At that time, the therapist had been seeing Costakis for only three months and anticipated improvement with therapy. Furthermore, the therapist's opinion was inconsistent with findings from the clinical psychologist at the Center for Pain Management who found Costakis's attention and concentration within normal limits and with psychiatrist Dr. Maust's notes indicating that Costakis had no problem with concentration. [R. 39 (citing R. 626 & 777).]

As for the need to call a medical expert, Costakis acknowledges that the DDS evaluations qualify. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (concluding

9

that a state agency physician's opinion on a disability form satisfies the requirement that the ALJ have expert opinion on the question of medical equivalence).  However, he argues that the ALJ should have called a medical expert given the amount of time that had passed since the DDS evaluations.  Costakis does not explain how the more recent records would have changed the state agency reviewers' opinions, and the Court will not make his arguments for him.

Finally, Costakis challenges the ALJ's credibility determination.  More specifically, he argues that she failed to comply with SSR 96-7p and that she erred in failing to credit his complaints of pain and in picking out inconsistencies in the record.  The Court will overturn an ALJ's credibility finding only if it is "patently wrong," *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015), which means that it "lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).  An ALJ may discount a claimant's testimony "on the basis of the other evidence in the case." *Stepp*, 795 F.3d at 720 (quoting *Johnson v. Barnhart,* 449 F.3d 804, 805 (7th Cir. 2006)).  That is what ALJ de la Torre did in this case.  She considered Costakis's allegations in light of all the evidence of record, relying on the medical records of his treating physicians, psychiatrist, and pain specialists; Costakis's reported daily activities and behaviors, indicating that he was more active than he alleged; and the state agency assessments of his residual functional capacity.  [R. 35-39.] She also noted that, although Costakis claimed constant lower back pain that felt like a knife being twisted into his back, the physicians who examined him and specialized in pain management, described him as in "no acute distress."  [R. 36.]

In arguing noncompliance with SSR 96-7p, Costakis asserts that the ALJ did not discuss his daily levels of medication, his back brace, and how often he used the TENS unit and did not evaluate any of the physical therapy notes in the file. An ALJ need not consider every factor in SSR 96-7p. *Harrison v. Astrue*, No. 208-CV-106-PRC, 2009 WL 1085956, at *11 (N.D. Ind. Apr. 22, 2009). Rather, "the ALJ's determination or decision regarding claimant credibility 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting SSR 96-7p). The ALJ's written decision does not reflect close scrutiny of the physical therapy notes contained in the file, but as stated, the ALJ is not required to analyze each piece of evidence in the record. *See Arnett*, 676 F.3d at 592. Furthermore, the ALJ's decision reflects that she did consider the fact that Costakis had physical therapy. [*See* R. 36-37.] In addition, she mentioned Costakis's pain medication (Nucynta and Gabapentin) and his other treatment such as nerve branch blocks and the IDET procedure. [R. 34-35.]

Besides, the ALJ did not totally discount Costakis's testimony regarding his limitations due to pain; rather, she found that he had limitations from his impairments, albeit not disabling, and limited him to light work with restrictions as noted in her RFC finding. [R. 33, 40.] *Cf. Schmidt v. Astrue,* 496 F.3d 833, 844 (7th Cir. 2007) (noting, with approval, that the ALJ "did not totally discount [claimant's] testimony regarding how her pain affected her ability to perform certain activities, as evinced by the ALJ's decision

11

to limit [claimant's] range of work to sedentary when assessing her residual functional capacity"). The ALJ's credibility finding is not patently wrong; rather, it is well supported in the evidence and the ALJ adequately explained her reasons for discounting Costakis's allegations of disabling pain.

### III. Conclusion

For the foregoing reasons, the decision denying social security benefits is affirmed.

DATED: 06/20/2016

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record